No. 13-2403
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

Plumbing Services, Inc., and PSI Mechanical, Inc.,
*Appellants*

v.

Trustees of the Plumbers & Pipefitters National Pension Fund,
*Appellees*

Appeal from the U.S. District Court
for the Eastern District of Virginia, Alexandria Division

## **BRIEF OF APPELLEES**

John R. Harney
Dinah S. Leventhal
O'Donoghue & O'Donoghue LLP
4748 Wisconsin Ave., NW
Washington, DC 20016
Tel.: 202-362-0041
jharney@odonoghuelaw.com
dleventhal@odonoghuelaw.com

Dated: April 28, 2014

## <u>CORPORATE DISCLOSURE STATEMENT (L.R. 26.1)</u>

Pursuant to FRAP 26.1 and L.R. 26.1, Appellees make the following disclosures:

1. Is party/amicus a publicly held corporation or other publicly held entity?  No

2. Does party/amicus have a parent corporation?  No

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  No

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  No

5. Is party a trade association?  No

6. Does this case arise out of a bankruptcy proceeding?  No


　　　　　/s/ John R. Harney
John R. Harney
Dinah S. Leventhal
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
dleventhal@odonoghuelaw.com

*Counsel for Appellees*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES ..................................................................1

COUNTERSTATEMENT OF THE CASE ..............................................2

SUMMARY OF ARGUMENT .............................................................11

ARGUMENT ....................................................................................16

I.  The District Court Correctly Denied the Employer's Motion to Dismiss
    Because Personal Jurisdiction was Established Under ERISA
    and the Balance of the Equities did not Support a Transfer of Venue. ............16

    A. Standard of Review...............................................................16

    B. Applicable Legal Principles Regarding Personal Jurisdiction
       Under ERISA.......................................................................17

    C. The Court Has Personal Jurisdiction Over the Employer...........................20

    D. The District Court Correctly Denied the Employer's Motion
       for Dismissal on Grounds of *Forum Non Conveniens* ..............................22

        1.  Standard of Review. ...........................................................22

        2.  The District Court Properly Refused to Transfer the Case. .................23

II.  The District Court Correctly Granted the Fund's Motion for Summary
     Judgment. ...........................................................................26

    A. Standard of Review...............................................................26

    B. Applicable Legal Principles Regarding Withdrawal Liability .................27

    C. The Fund Proved That the Employer is Liable.........................................33

D. The Employer's Other Arguments on Appeal Lack Merit ........................39

  1. This is an Action for Statutory Withdrawal Liability Not
     Post-Expiration Contributions ...............................................................39

  2. The Fund's Motion for Summary Judgment was Supported
     by Substantial Evidence ........................................................................42

CONCLUSION ...........................................................................................................44

POSITION ON ORAL ARGUMENT

ADDENDUM

## TABLE OF AUTHORITIES

## Cases

Alaska Trowel Trades Pension Fund v. Lopshire,
103 F.3d 881 (9th Cir. 1996) ................................................................34

Anderson v. Liberty Lobby, Inc.,477 U.S. 242 (1986)............................................27

Aquilino v. United States,363 U.S. 509 (1960)........................................36

Bakery and Confectionary Union and Indus. Intern. Pension Fund v
Ralph's Grocery Co., 118 F.3d 1018 (4th Cir. 1997)....................................... 34, 35

Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund v. Canny,
900 F.Supp. 583 (N.D.N.Y.1995)..........................................................32

Beal v. Hardy, 769 F.2d 213 (4th Cir.1985)..........................................................27

Board of Trs., Sheet Metal Workers' Nat. Pension Fund v. BES Servs., Inc.,
469 F.3d 369 (4th Cir. 2006) ................................................................30

Board of Trustees Sheet Metal Workers' Nat. Pension Fund v.
McD Metals, Inc., 964 F. Supp. 1040 (E.D. Va. 1997)................................. 18, 20

Board of Trustees, Sheet Metal Workers National Pension Fund v.
Baylor Heating and Air Conditioning, Inc.,702 F. Supp. 1253
(E.D. Va. 1988) ............................................................................ *passim*

Board of Trustees, Sheet Metal Workers Natl. Pension Fund v.
Courtad Constr. Sys., Inc., 439 F. Supp. 2d 574 (E.D. Va. 2006) ......................30

Boon Partners v. Advanced Fin. Concepts, Inc.,
917 F. Supp. 392 (E.D.N.C. 1996) ........................................................19

Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (4th Cir.1966) ....................................17

Brock v. Entre Computer Centers, Inc., 933 F.2d 1253 (4th Cir.1991) .................23

Busch v. Buchman, Buchman & O'Brien, Law Firm,
  11 F.3d 1255 (5th Cir.1994) ...................................................................19

Carpenters Pension Trust Fund for N. California v.
  Underground Const. Co., Inc., 31 F.3d 776 (9th Cir. 1994).......................... 27, 28

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................26

Central States Se. & Sw. Areas Pension Fund v.
  Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir 1989) .................................25

Central States, Se. & Sw. Areas Pension Fund v. Slotky,
  956 F.2d 1369 (7th Cir. 1992) ...............................................................17

Chicago Truck Drivers v. El Paso Co., 525 F.3d 591 (7th Cir. 2008) ....................33

Collins v. Straight Inc., 748 F.2d 916 (4th Cir.1984).............................................23

Combs v. Bakker, 886 F.2d 673 (4th Cir.1989) ............................................... 16, 17

Cross v. Fleet Reserve Ass'n Pension Plan,
  383 F. Supp. 2d 852 (D. Md. 2005)......................................................23

ESAB Grp., Inc. v. Centricut, Inc.,
  126 F.3d 617 (4th Cir. 1997) ................................................... 19, 21, 22

Flying Tiger Line v. Teamsters Pension Trust Fund of Phila.,
  830 F.2d 1241 (3d Cir. 1987) ...............................................................37

Flynn v. Berich, 603 F. Supp.2d 49 (D.D.C. 2009)........................................... 25, 26

Hetchkop v Woodlawn at Grassmere, Inc., 116 F.3d 28 (2d Cir. 1997)................33

I.A.M. Nat'l Pension Fund, Plan A v. Clinton Engines Corp.,
  825 F.2d 415 (D.C. Cir 1987)...............................................................38

Industrial Turnaround Corp. v. N.L.R.B.,
  115 F.3d 248 (4th Cir. 1997) ...............................................................36

International Shoe Co. v. Washington,
  326 U.S. 310 (1945)............................................................................18

Laborers Health and Welfare Trust Fund for Northern Calif. v. Advanced
  Lightweight Concrete Co., Inc., 484 U.S. 539 (1988)................................. *passim*

Lingle v. Norge Div of Magic Chef, Inc.,
  486 U.S. 399 (1988).............................................................................36

Lynch v. Vanderhoef Builders,
  237 F.Supp.2d 615 (D.Md. 2002)........................................................23

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
  475 U.S. 574 (1986) ..................................................................... 26, 27

Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290 (3d Cir. 1985) ................... 18, 21

McDonald v. Centra, Inc., 946 F.2d 1059 (4th Cir. 1991) ......................................31

Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,
  467 U.S. 717 (1984)....................................................................... 27, 28

Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,
  119 F.3d 935 (11th Cir. 1997) .............................................................19

Seaway Port Auth. of Duluth v. Duluth-Superior ILA Marine Ass'n Restated
  Pension Plan, 920 F.2d 503 (8th Cir 1990) ..........................................37

Stafford v. Briggs, 444 U.S. 527 (1980)...................................................................19

Teamsters Joint Council No. 83 v. Centra, Inc.,
  947 F.2d 115 (4th Cir. 1991) .................................................. 26, 29, 32

Teamsters Pension Trust Fund-Bd. of Trustees of Western Conference v.
   Allyn Transp. Co., 832 F.2d 502 (9th Cir. 1987) ...................................31

Teamsters v. Lucas Flour Co., 369 U.S. 95 (1962) ...................................35

Trustees of the Plumbers & Pipefitters National Pension Fund v.
   T.L. Services, Inc., Civ. Action No. 00-1113-A, 2000 WL 1923515
   (E.D.Va. Sept. 27, 2000)..........................................................................24

Volvo Cars of N. Am., LLC v. United States,
   571 F.3d 373 (4th Cir. 2009) ..................................................................35

**Constitutional Provisions**

5th Amendment, Due Process Clause ............................................... 19, 20

14th Amendment, Due Process Clause ............................................. 19, 20

**Statutes**

26 U.S.C. § 414(c) ....................................................................................28

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1404 .......................................................................... *passim*

29 U.S.C. § 158(f) ....................................................................................36

29 U.S.C. § 1132 .......................................................................... *passim*

29 U.S.C. § 1145 .............................................................................. 17, 35

29 U.S.C. § 1301 .............................................................................. 28, 29

29 U.S.C. §§ 1381-1453 ...........................................................................27

29 U.S.C. §§ 1381-1399 ...........................................................................30

29 U.S.C. § 1383 ................................................................... 11, 28

29 U.S.C. § 1391 ......................................................................29

29 U.S.C. § 1392 ......................................................................41

29 U.S.C. § 1399 ............................................................... *passim*

29 U.S.C. § 1401 ............................................................... *passim*

29 U.S.C. § 1451 ......................................................................17

**Rules**

Fed. R. Civ. P. 4(e) ............................................................ 18, 20

Fed. R. Civ. P. 12(b)(2) ...........................................................16

Fed. R. Civ. P. 56 .............................................................. 26, 27

Fed. R. Evid. 1002 ...................................................................10

Fed. R. Evid. 1004 ...................................................................10

**Regulations**

26 C.F.R. § 1.414(c)-2 ............................................................29

29 C.F.R. § 4001.3 ..................................................................28

29 C.F.R. § 4219.31 ..................................................................9

<u>**JURISDICTIONAL STATEMENT**</u>

This is a lawsuit to collect withdrawal liability owed by an employer to a multiemployer pension plan pursuant to the Employee Retirement Income Security Act of 1974, as amended (ERISA). Federal law subject matter jurisdiction exists in this case under 29 U.S.C. §§ 1132(e), 1145 and 1451(b) (Add. at A-2, A-3 and A-7 to A-8).[1]

This Court has jurisdiction to hear this appeal from a final decision of the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1291.

<u>**STATEMENT OF ISSUES**</u>

1. Whether the district court correctly found that there was personal jurisdiction over Appellants where ERISA provides for nationwide service of process and Appellants did not show inconvenience substantial enough to raise a concern under the Fifth Amendment's Due Process Clause.

2. Whether the district court, after having treated Appellants' motion to dismiss for *forum non conveniens* as a motion to transfer, correctly decided not to transfer the case where the balance of the equities was not strongly in the Appellants' favor.

---

[1] Provisions of law that are set forth in the Addendum to this Brief will be followed in the text by "(Add. at ___)".

3. Whether the district court correctly found that the Appellants were an employer subject to withdrawal liability under ERISA where one of the Appellants signed a letter of assent binding it to contribute to the Appellee pension fund and the other Appellant is admittedly a trade or business under common control.

4. Whether, in view of the Appellants' status as an employer subject to the arbitration requirement, the district court correctly found that the Appellants had waived all defenses to withdrawal liability by failing to initiate arbitration such that summary judgment was properly entered for Appellees.

## COUNTERSTATEMENT OF THE CASE[2]

1.     The Appellees, Trustees of the Plumbers & Pipefitters National Pension Fund ("Fund") are the plan administrator of a multiemployer defined benefit pension fund that primarily covers employees in the building and construction industry.  (App. II, Doc. 36-1, p. 1 of 77 (Sweeney Aff.) ¶ 2.) [3]

2.     Appellants, Plumbing Services, Inc. and PSI Mechanical (hereafter referred to as "PSI" and "PSI Mechanical" respectively, or collectively as the

---

[2] The Fund objects to the "Statement of Facts" on pp. 14-28 of the Employer's Brief in that it is replete with argumentative statements and lacks references to the record to show the source of the "facts" alleged.

[3] Documents in the two-volume Appendix will be referred to as App. (I or II), Doc. (tab number on hard copy) at ____.)

2

"Employer"[4]) are Alabama corporations that are plumbing contractors in the Birmingham, Alabama area. They are both wholly owned by Kenneth Julian. (App. I, Doc. 9-1 at 1 (Julian Affidavit); Doc. 10-1, Ex. A at 1 (Alabama Secretary of State record re PSI Mechanical).)

3.     The Fund's records reflect that PSI commenced participation as a contributing employer in the Fund on or about April 8, 1998 when Julian signed a Letter of Assent binding PSI to the terms of the collective bargaining agreement ("CBA") between Local 91 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Local 91") and the Associated Plumbing, Heating and Cooling Contractors of Jefferson County, Alabama, establishing the terms and conditions of work for the journeymen and apprentice plumbers and pipefitters employed by PSI and requiring PSI to contribute to the Fund ("Letter of Assent"). (App II, Doc. 38-2.)

4.     The Letter of Assent, which was addressed to Local 91, specifically stated, in pertinent part, as follows:

> The undersigned employer hereby agrees to be bound by the provisions of the current Labor Agreement executed and presently existing between the Associated Plumbing, Heating and Cooling

---

[4] *See* Affidavit of Kenneth Julian in which he indicated that he was the sole owner of both companies. (App. I, Doc. 9-1 at 1.) Pursuant to 29 U.S.C. § 1301(b)(1) (Add. at A-3), trades or businesses under common control are treated as a single employer for purposes of withdrawal liability.

3

Contractors of Jefferson County Alabama and the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Birmingham, Alabama, and hereby agrees to comply with all terms and conditions contained in the aforementioned Agreement, and by all amendments and interpretations thereof.

The undersigned employer hereby certifies that he has examined a copy of the aforesaid Agreement and is familiar with the terms thereof and that the execution of this Letter of Assent shall be binding in the same manner and to the same extent as though said employer had executed the above Agreement and all amendments thereof.

The undersigned employer further agrees that he will make contributions to the … Plumbers & Pipefitters National Pension Fund …as provided for by the Agreements now existing and as hereafter between the aforesaid Plumbing, Heating and Cooling Contractors and the United Association.

This Letter of Assent shall remain in effect until terminated by sixty (60) days written notice by the parties to the aforementioned Agreement or as otherwise provided in such Agreement.

(App. II, Doc. 38-2.)

5.    Successive CBAs between Local 91 and the Associated Plumbing, Heating and Cooling Contractors of Jefferson County, Alabama, to which PSI bound itself through the Letter of Assent, required contributions to the Fund for each hour worked by PSI's employees covered by the CBA.  (App. II, Doc. 46-1 at 3-4.)

6.    PSI remitted contributions to the Fund on behalf of its bargaining unit employees starting in 1998.  (App. I, Doc. 12-2 p.4 of 72 (Fund's withdrawal liability worksheet showing PSI's annual contributions to the Fund for each year

4

from 1998-2010); *id.* p. 24 of 72 (PSI's questionnaire responses stating that it signed Letter of Assent on April 8, 1998 and that all contributions were paid to the Fund for work performed through May 10, 2011); *see also* App. II, Doc. 36-2 at Response No. 2 (PSI admitting that it made contributions to the Fund from 1998 to 2011).)

7. PSI continued contributing to the Fund until on or about May 10, 2011, when PSI ceased to have an obligation to contribute to the Fund after having terminated its agreement with Local 91. (App. II, Doc. 36-1 p. 2 of 77 (Sweeney Aff.) ¶ 5; App. I, Doc. p. 31 of 72 (March 10, 2011 letter by which PSI gave Local 91 the required sixty (60) day notice to terminate the CBA); *see also* App. II, Doc. 36-2 at Response No. 4 (PSI admitted that it ceased to have an obligation to contribute to the Fund on or about May 10, 2011).)

8. After the Employer ceased to have an obligation to contribute to the Fund, employees of the Employer continued to perform work in the jurisdiction of the CBA of the type for which contributions were previously required. (App. II, Doc. 36-2 at Response No. 5 (PSI admitted that, after it ceased to have an obligation to contribute to the Fund, the Employer's employees continued to perform work).[5])

---

[5] The admission states that the Employer admitted that it had continued to perform work but was unable to comment on the "jurisdiction of Local 91." The Fund's counsel thereafter sent a letter to the Employer's counsel defining the

9.     The Fund sent a letter to PSI on June 14, 2012, notifying it that the Fund had determined that PSI had experienced a complete withdrawal under ERISA and was subject to withdrawal liability in the total amount of $188,685.00. (App. II, Doc. 36-1 p. 2 of 77 (Sweeney Aff.) ¶ 6.)  The letter indicated that PSI could make a lump sum payment or could amortize its liability by making monthly payments of $5,328.00 with the first monthly payment due August 1, 2012.  (App. II, Doc. 36-1 p. 7 of 77 (Fund's June 14, 2012 withdrawal liability assessment letter to PSI).)

10.     The Employer made no payments in response to the Fund's assessment or at any time.  (App. II, Doc. 36-2 at Response No. 7 (Employer's admission that it has made no withdrawal liability payments to the Fund).)

11.     On September 10, 2012, an attorney for PSI sent a letter to the Fund requesting review of the withdrawal liability assessment pursuant to 29 U.S.C. § 1399(b)(2)(A) (Add. at A-5).  (App. II, Doc. 36-1 p. 2 of 77 (Sweeney Aff.) ¶ 8 and p. 13 of 77 (PSI's counsel's September 10, 2012 letter received by the Fund).)

12.     By letter dated December 10, 2012, the Fund requested that PSI and PSI Mechanical provide information to enable the Fund to evaluate PSI's September 10, 2012 request for review.  (App. II, Doc. 36-1 p.15 of 77 (Fund

---

jurisdiction of Local 91 and asking the Employer to respond to the request for admission on that basis.  (App. II, Doc. 36-3 p. 4 of 5.)  The Employer did not respond to that request and should, therefore, be assumed to have agreed that its admission was correct in view of the additional information.

counsel's December 10, 2012 letter to PSI's counsel).)

13.     On January 9, 2013, the Fund received PSI's response in which PSI provided some of the requested information but refused to respond to any questions that related to PSI Mechanical on the grounds that it was not "privy" to that information.  (App. II, Doc. 36-1 p. 3 of 77 (Sweeney Aff.) ¶ 11; *id.* pp. 26-69 of 77 (PSI's response to Fund's questionnaire).)  Fund counsel sent PSI's counsel a request that the Employer supplement its responses.  (App. II, Doc. 36-1 p. 3 of 77 (Sweeney Aff.) ¶ 12; *id.* pp.70-72 of 77 (Fund counsel's 1/11/13 letter to PSI's counsel).)  The Fund received no response to that request. (*Id.* p. 3 of 77 (Sweeney Aff.) ¶ 13.)

14.     Notwithstanding PSI's refusal to respond to the Fund's questions regarding PSI Mechanical, the Employer later admitted that Julian is the sole shareholder of both companies such that they are trades or businesses under common control which are to be treated as a single employer for purposes of withdrawal liability.  (App. I, Doc. 27 (Amended Complaint) ¶ 18; App. II, Doc. 40 (Answer) ¶ 11; *see also* App. II, Doc. 36-2 at Response Nos. 9-11 (Employer's admissions regarding facts underlying common control determination).)

15.     On January 30, 2013, the Fund, through counsel, sent a letter to the Employer's counsel responding to the request for review pursuant to 29 U.S.C. § 1399(b)(2)(B) (Add. at A-5).  (App. II, Doc. 36-1 pp. 3-4 of 77 (Sweeney Aff.)

7

¶14.) In that letter, the Fund indicated that it had reviewed the arguments raised by PSI's request for review and had determined to reject those arguments and uphold the assessment of withdrawal liability. (App. II, Doc. 36-1, pp. 73-76 of 77 (Fund counsel's January 30, 2013 letter to PSI's counsel).)

16.    The Employer did not initiate arbitration of its dispute with the Fund in this matter within sixty (60) days after Fund counsel's January 30, 2013 letter or at any time. (App. II, Doc. 36-1, p. 4 of 77 (Sweeney Aff.) ¶ 15.)

17.    The Fund sent a September 4, 2012 late payment notice to the Employer indicating that the August 1, 2012 payment was past due. *(Id. ¶ 16.)* The Employer made no payment in response to that letter. *(Id.)* The Fund, through counsel, sent a second letter on December 11, 2012 indicating that the payments for August through December 2012 were past due and were required to be made notwithstanding the Employer's request for review. *(Id.)* The Fund received no withdrawal liability payment from the Employer in response to that letter or otherwise. *(Id.)*

18.    In January 2013, the Fund filed this lawsuit to collect unpaid interim withdrawal liability payments and to seek to enjoin the Employer to make future monthly payments when due. (App. I, Doc. 1 at 1-10.)

19.    The Employer filed a Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion to Dismiss on *Forum Non Conveniens*

Grounds arguing that the district court did not have personal jurisdiction over the Employer.  (App. I, Doc. 9.)  The Fund opposed the Employer's motion.  (App. I, Doc. 10.)

20.    On June 4, 2013, Fund counsel sent a letter to the Employer's counsel indicating that the Employer was in default within the meaning of 29 U.S.C. § 1399(c)(5)(A) (Add. at A-6)  and 29 C.F.R. § 4219.31 (Add. at A-9 to A-10) due to its failure to make any payment within 60 days of the December 11, 2012 late payment notice or within 60 days of the end of the period for the Employer to timely initiate arbitration.  *(Id. ¶ 17)* The letter indicated that, as a result of the default, the entire amount of withdrawal liability of $188,685.00 plus accrued interest was then due.  *(Id.)*

21.    On June 21, 2013, the Fund filed an Amended Complaint asserting that the entire outstanding liability was then due and owing.  (App. I, Doc. 27 at 7-9.)  The Employer renewed its motion to dismiss for lack of personal jurisdiction as to the Amended Complaint.  (App. I, Doc. 30.)  The Fund opposed the motion. (App. I, Doc. 32.)  The district court denied the motion.  (App. I, Doc. 34.)

22.    On August 15, 2013, the Fund filed a motion for summary judgment (App. I, Doc. 35) and memorandum of law in support thereof with exhibits (App. II, Doc. 36).  The Employer opposed the motion.  (App. II, Doc. 38.)  The Fund filed a reply.  (App. II, Doc. 39.)  The district court granted the Fund's motion and

directed the Fund to file a motion for interest, liquidated damages, attorneys' fees and costs. (App. II, Doc. 42.)

23. The Fund determined the amounts due it under 29 U.S.C. § 1132(g)(2) (Add. at A-3) by applying the terms of the Plumbers & Pipefitters National Pension Plan to the total withdrawal liability owed to determine the amount of liquidated damages and interest owed as set forth in the Fund's Request. (App. II, Doc. 36-1 p. 4 of 77 (Sweeney Aff.) ¶¶ 19-22; [6] *id*. p. 77 of 77.)

24. On September 11, 2013, the Fund filed its Request for Liquidated Damages, Interest, Attorneys' Fees and Costs ("Request") with exhibits. (App. II, Doc. 43.) The Employer opposed the Request. (App. II, Doc. 44.) The district court directed the Fund to file a copy of the applicable CBA that required the Employer to make contributions to the Fund. (App. II, Doc. 45.) The Fund submitted a Supplemental Affidavit of Fund Administrator William T. Sweeney,

---

[6] The Employer argues that the Fund's presentation of the pertinent sections of the Plan document through quotation in the administrator's affidavit, rather than by submitting a copy of the Plan document, violated Fed. R. Evid. 1002 ("Best Evidence Rule") (Add. at A-10). (Employer's Brief at 25.) The Employer is incorrect. These provisions were admissible by affidavit pursuant to Fed. R. Evid. 1004 (Add. at A-10) (original is not required and other evidence of content of writing is admissible if the writing is not closely related to a controlling issue). An award of interest and liquated damages is mandatory in an ERISA collection action in which a judgment in favor of the plan is awarded. *See* 29 U.S.C. § 1132(g)(2) (Add. at A-3) (requiring interest and liquidated damages at rates provided under the plan). These Plan provisions are not provided to address the controlling issue of liability but only to indicate the applicable rates for the court to apply in determining the amount of the judgment.

Jr., attached to which were two applicable CBAs, one that was in effect from September 1, 1997 to August 31, 1999, and the other that was in effect from September 6, 2008 until August 31, 2011.[7]  (App. II, Doc. 46.)

25.    On October 16, 2013, the district court granted the Fund's Request. (App. II, Doc. 48.)  The district court then entered judgment in favor of the Fund in the total amount of $247,013.21 including the unpaid withdrawal liability, interest, liquidated damages, costs and attorneys' fees as provided in 29 U.S.C. § 1132(g)(2) (Add. at A-3) and the Plan.  (App. II, Doc. 49.)  The Employer entered a Notice of Appeal.  (App. II, Doc. 50.)

## SUMMARY OF ARGUMENT

This is a straightforward collection case under ERISA in which the Fund, a multiemployer defined benefit pension plan, seeks to collect withdrawal liability from a former contributing employer.  The Employer was obligated to contribute to the Fund under successive CBAs pursuant to the 1998 Letter of Assent.  The Employer experienced a complete withdrawal from the Fund as that term is defined for building and construction industry employers in 29 U.S.C. § 1383(b) (Add. at A-4) (employer both ceased to have an obligation to contribute and

---

[7] The Letter of Assent bound PSI to make contributions to the Fund "as provided for by the Agreements now existing and as hereafter" between the multiemployer association and Local 91 until terminated by sixty days notice. Thus, PSI was bound by both of the successive CBAs that the Fund submitted to the court, as well as by the intervening CBAs that were not submitted, until the Employer terminated its obligation on or about May 10, 2011.

continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required). The Fund properly notified the Employer of the withdrawal liability and provided a payment schedule. The Employer did not make any payments, and the Fund filed this lawsuit in the Eastern District of Virginia, where the Fund is administered, to collect the payments owed.

In response to the filing of this lawsuit, the Employer moved to dismiss for lack of personal jurisdiction arguing that it did not have minimum contacts with the Commonwealth of Virginia. The district court correctly denied this motion on the grounds that ERISA is a federal statute which provides for nationwide service of process (*see* 29 U.S.C. § 1132(e)(2) (Add. at A-2) ("process may be served in any other district where a defendant resides or may be found"); that the Employer was properly served in Alabama; that the Employer, which is comprised of two jointly-owned Alabama corporations has sufficient contacts with the United States as a whole to comport with the Fifth Amendment's Due Process clause; and that the Employer had not shown hardship rising to a constitutional level in having to respond to suit in Virginia. The Employer has failed to make any arguments in this Court that would suggest that the district court's ruling was incorrect.

The Employer alternatively moved the district court for dismissal on the grounds of *forum non conveniens*. The district court correctly treated this motion

as a motion under 28 U.S.C. § 1404 to transfer the case to the federal court in Alabama. The district court exercised its discretion to deny that motion on the grounds that the lawsuit was properly filed in Virginia, where the Fund is administered, pursuant to 29 U.S.C. § 1132(e)(2) (Add. at A-2) ("an action under this subchapter … may be brought in the district where the plan is administered"), and the Employer had not shown that the balance of other factors weighed in favor of a transfer of the case away from the plaintiffs' choice of forum, particularly where there was not likely to be a need for witness testimony in that the Employer had waived its defenses to liability by not initiating arbitration. The Employer has failed to make any arguments in this Court that would suggest that the district court's ruling was incorrect, let alone an abuse of discretion.

Although the Employer submitted a letter to the Fund requesting review of the assessment by the plan sponsor, it did not thereafter initiate arbitration of its disputes with the Fund's assessment as required by statute. *See* 29 U.S.C. § 1401(Add. at A-7) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration …"). Accordingly, the Employer waived its defenses to liability in this lawsuit. The Fund, therefore, moved for summary judgment, and the district court correctly granted the Fund's motion.

13

The Employer argues that the district court should not have granted summary judgment because the Employer was not bound to a CBA in that the only document it signed was a Letter of Assent that did not state all of the particulars of the Employer's contribution obligation. This argument is without merit. The text of the Letter of Assent makes clear that the Employer bound itself to comply with all of the terms and conditions contained in the CBA to the same extent as if the Employer had executed the CBA. Further, the Employer did in fact make contributions to the Fund over a thirteen year period in compliance with successive CBAs, and the Fund relied on the Employer's compliance with the CBA in awarding pension credit to the Employer's employees for which the Fund is now liable. The Employer is, therefore, estopped from asserting that it was never bound to contribute.

The Employer's arguments never address the clear language of the Letter of Assent or the Employer's history of compliance with the CBA. Rather, the Employer cites to several inapposite cases construing contracts in non-labor law contexts under Alabama law. These cases are not relevant to the interpretation of the letter of assent, which, as a labor agreement, is governed by federal common law principles. Applicable federal precedents recognize that a letter of assent can bind an employer to the terms of a collective bargaining agreement.

14

The Employer also argues that the district court lacked subject matter jurisdiction on the basis of *Laborers Health and Welfare Trust Fund for Northern Calif. v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539 (1988). The Court there held that an action to compel an employer to make post-expiration contributions (required as part of the employer's obligation to maintain existing terms and conditions of employment pending good faith bargaining to impasse) had to first be brought by the union as an unfair labor practice to the National Labor Relations Board and could not be brought by an employee benefit fund as a collection action under ERISA. The Employer's argument is misplaced because this is an action to collect statutory withdrawal liability owed pursuant to ERISA not an effort to collect post-expiration contributions owed pursuant to the National Labor Relations Act.

Finally, the Employer argues that the Fund's motion for summary judgment should not have been granted because it was supported by "no evidence." This is simply incorrect. The Fund supported its motion for summary judgment with affidavits, declarations, documents and the Employer's admissions. The Employer, by contrast, was unable to produce any evidence to demonstrate a genuine dispute as to any material fact. Accordingly, the district court correctly granted summary judgment for the Fund.

15

<u>**ARGUMENT**</u>

**I.   The District Court Correctly Denied the Employer's Motion to Dismiss Because Personal Jurisdiction was Established Under ERISA and the Balance of the Equities did not Support a Transfer of Venue.**

### A.   Standard of Review.

When a court's personal jurisdiction over a defendant is properly challenged by motion under Fed. R. Civ. P. 12(b)(2), the jurisdictional question thereby raised is one for the judge, with the burden on the plaintiff to prove grounds for jurisdiction by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). In *Combs,* the Court explained that,

> when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. *Id.* In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction. *Id.*

*Id.* (citations omitted).

To the extent that the district court's conclusions concerning whether the plaintiff has proved personal jurisdiction rest upon legal precepts, those conclusions are reviewed on appeal *de novo.  Id.* To the extent the district court's conclusions are based on findings of fact, however, such findings should not be

disturbed by an appellate tribunal unless clearly erroneous. *Id.; Bowman v. Curt G. Joa, Inc.,* 361 F.2d 706, 717 (4th Cir.1966).

### B.    Applicable Legal Principles Regarding Personal Jurisdiction Under ERISA.

ERISA (as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA)) provides that, where an employer fails to make any withdrawal liability payment within the time prescribed, such failure "shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b) (Add. at A-8). Section 1145 provides that employers that are obligated to make contributions to a multiemployer plan shall make such contributions. 29 U.S.C. § 1145 (Add. at A-3). Section 1132 establishes the authority of a multiemployer plan to sue an employer for failing to comply with section 1145. 29 U.S.C. § 1132(g)(2) (Add. at A-2, A-3). Accordingly, by way of Sections 1451(b) and 1145, Section 1132 governs suits to collect unpaid withdrawal liability. *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992).

Section 1132(e)(2) (Add. at A-2) provides that a federal court lawsuit may be brought in the district where the plan is administered. It further states that, "*process may be served in any other district where the defendant resides or may be found.*" 29 U.S.C. §1132(e)(2) (emphasis added). This provision reflects congressional intent to ease the collection burden on multiemployer plans such as the

17

Fund. *Board of Trustees, Sheet Metal Workers National Pension Fund v. Baylor Heating and Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256-57 (E.D. Va. 1988).

Because ERISA provides for nationwide service of process, minimum contacts with the forum state is not the relevant test for personal jurisdiction.[8] *Board of Trustees Sheet Metal Workers' Nat. Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1043-45 (E.D. Va. 1997). Rather, the court should apply a two-step inquiry, first determining whether the defendant is amenable to service of process under Fed. R. Civ. P. 4(e) and then determining whether the exercise of personal jurisdiction is consistent with the Due Process Clause of the Fifth Amendment (Add. at A-2). *Id.*

Unlike the Fourteenth Amendment (Add. at A-2), the Fifth Amendment does not require an examination of the fairness of forcing a defendant to litigate in a particular state because the encroachment by one state upon the sovereignty of another is not at issue. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 294 (3d

---

[8] The Employer's argument with regard to personal jurisdiction focuses on its lack of sufficient minimum contacts with the forum state under the test for personal jurisdiction articulated in *International Shoe Co. v. Washington,* 326 U.S. 310, 311, 316 (1945). Employer Brief at 31. *International Shoe* arose in state court, however, and it addressed the requirements of due process under the Fourteenth Amendment (Add. at A-2). It is not the relevant inquiry for determining personal jurisdiction for an action brought in federal court under a federal statute providing for nationwide service of process, which itself provides the basis for personal jurisdiction as long as the exercise of that jurisdiction comports with the due process requirements of the Fifth Amendment (Add. at A-2). *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617 626 (4th Cir. 1997).

Cir.), *cert. denied,* 474 U.S. 980 (1985). Moreover, if necessary, fairness to a defendant can be resolved through application of the federal transfer statute. *See* 28 U.S.C. § 1404, *infra*; *Boon Partners v. Advanced Fin. Concepts, Inc.*, 917 F. Supp. 392, 397 (E.D.N.C. 1996). Accordingly, under the Fifth Amendment, due process permits a federal court to assert personal jurisdiction over a defendant who has minimum aggregate contacts with the United States. *Stafford v. Briggs,* 444 U.S. 527, 553–54 (1980) (Stewart, J., dissenting); *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir.1994).

As this Court explained in *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997), a case brought under RICO which also contains a nationwide service of process provision*,* while the Fifth Amendment's Due Process Clause also protects the liberty interests of individuals against unfair burden and inconvenience, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern," 126 F.3d at 627, *quoting Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 947 (11th Cir. 1997).

The *ESAB* Court explained that it had discerned no evidence from the record in that case of "such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy of allowing the assertion of *in personam* jurisdiction" in the forum elected by the plaintiff pursuant to the statutory provision of nationwide service of process. 126 F.3d at 627, *citing Republic of*

19

*Panama*, 119 F.3d at 948 (noting that "the burden is on the defendant" to show that the burden of distant litigation is so great as to put him at a "severe disadvantage").

## C.    The Court Has Personal Jurisdiction Over the Employer.

As the court stated in *Bd. of Trustees Sheet Metal Workers' Nat. Pension Fund v. McD Metals, Inc.*, 964 F. Supp. at 1045, under very similar circumstances, "[t]he two step jurisdictional analysis, applied here, compels the conclusion that personal jurisdiction over [the Employer] is entirely appropriate in Virginia."

With regard to the first step of that analysis, whether the defendant is amenable to service of process under applicable law, ERISA provides for nationwide service of process. *Id.*  *See* 29 U.S.C. § 1132(e)(2) (Add. at A-2) ("Where an action under [ERISA] is brought in a district court of the United States … process may be served in any other district where a defendant resides or may be found.")  Here, the Employer's registered agent resides and was found in Alabama and was properly served there pursuant to Fed. R. Civ. P. 4(e).  (App. I, Docs. 4, 5.)  Accordingly, the first prong of the inquiry is satisfied.

With regard to the second prong of the analysis, "since ERISA authorizes nationwide service of process, the Fifth Amendment's 'national' contacts theory is applicable here."  *McD Metals*, 964 F. Supp. at 1045.  Assessment of the sufficiency of a defendant's contacts with the United States involves an examination of the extent to which the defendant availed himself of the privileges

of American law and the extent to which he could reasonably anticipate being involved in litigation in the United States. *Max Daetwyler,* 762 F.2d at 295. Here, the two corporate Appellants are companies formed and operated in Alabama and incorporated under the laws of that state.  Accordingly, the Employer availed itself of the privileges of American law.   Further, the Employer could reasonably anticipate being involved in litigation in the United States.  Indeed, the Employer concedes that the federal court in Alabama could fairly handle the dispute (Employer's Brief at 34).  These facts make clear that the Employer has "national" contacts in the sense of contacts with Alabama, which is part of the United States.

Significantly, as in *ESAB*, *supra,* the Employer has not met its burden to show that the inconvenience to it of defending this suit in Virginia is so "extreme" as to put it at a "severe disadvantage."  126 F.3d at 627.  The Employer's argument on this issue in the district court was raised in the context of its motion to dismiss for *forum non conveniens* in which it offered no evidence of inconvenience other than to argue (incorrectly because it is not where all relevant events occurred) that the Northern District of Alabama is where the Employer has its "place of business, where all witnesses reside, and where all events relative to the litigation took place."  (App. I, Doc. 9 at 3.)  In this Court, the Employer additionally asserts (without the benefit of record evidence) that, to defend a suit in Virginia, it would

be required to hire local counsel and to "travel, and to eat and rent hotel rooms at great cost" (Employer's Brief at 22).

The district court correctly found that such allegations indicated only moderate inconvenience to the Employer. (App. I, Doc. 34 at 3.) That was particularly true here where the resolution of this case would not likely require the testimony of any witnesses because any dispute over the quantum of withdrawal liability was waived by the Employer's failure to arbitrate. (*Id.*) Accordingly, the purported inconvenience to the employer is simply not of constitutional magnitude. The district court properly rejected the Employer's motion to dismiss.

### D. The District Court Correctly Denied the Employer's Motion for Dismissal on Grounds of *Forum Non Conveniens*.

#### 1. Standard of Review.

The Employer also sought dismissal on the common law grounds of *forum non conveniens*. The district court indicated that the doctrine of *forum non conveniens* did not apply in this case because the Supreme Court has indicated that the *forum non conveniens* doctrine only applies where the alternative forum is abroad, and, in this case, the putative alternative forum was the United States District Court for the Northern District of Alabama. (App. I, Doc. 34 at 3, *citing Am. Dredging Co. v. Miller,* 510 U.S. 443, 449 n.2 (1994).) Rather than dismissing the motion on that ground, the district court treated the motion as a motion to transfer under 28 U.S.C. § 1404. (App. I, Doc. 34 at 3.)

Section 1404 of Title 28 provides, in pertinent part, that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden is on the moving party to show that transfer to another forum is proper. *Lynch v. Vanderhoef Builders,* 237 F.Supp.2d 615, 617 (D. Md. 2002). Unless the balance of factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight Inc.* 748 F.2d 916, 921 (4th Cir.1984). A district court's ruling on a motion to transfer under 28 U.S.C. § 1404 is reviewed for abuse of discretion. *Brock v. Entre Computer Centers, Inc.,* 933 F.2d 1253, 1257 (4th Cir.1991).

## 2. The District Court Properly Refused to Transfer the Case.

In determining whether to grant a motion to transfer under § 1404, courts are to consider: 1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice. *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856-57 (D. Md. 2005).

In general, a plaintiff's choice of venue is "entitled to substantial weight." *Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating,* 702 F.Supp. 1253, 1256 (E.D.Va.1988). "Indeed before transfer is warranted, a

defendant must demonstrate that the deference due plaintiff's choice of venue is clearly outweighed by other factors." *Id.*

In ERISA cases there is "a further policy rationale in favor of according plaintiff's chosen forum somewhat greater weight than would typically be the case" given Congress's stated intent to facilitate collection actions via ERISA's liberal venue provision. *Id. citing* H.R. Rep. No. 533, 93d Cong., 1st Sess.; *see also Trustees of the Plumbers & Pipefitters National Pension Fund v. T.L. Services, Inc.,* Civ. Action No. 00-1113-A, 2000 WL 1923515 (E.D.Va. Sept. 27, 2000) (Add. at A-1) ("ERISA's special venue provisions authorizing suits in districts where funds are administered reflects a specific Congressional intent to ease the burdens of nationwide litigation on fund administrators such as the plaintiff.").

The district court here found that the balance of the §1404 factors weighed against transfer out of the Eastern District of Virginia in that (1) it was the plaintiff's choice of forum; (2) it is only moderately inconvenient to the Employer; (3) there is unlikely to be a need for any witness testimony because the Employer waived its substantive defenses by failing to initiate arbitration (see discussion *infra)*; and (4) the interest of justice weighs in favor of that district. (App. I, Doc. 34 at 3-4.)

The district court correctly concluded that the Employer had not met its burden to prove that a transfer of the action to Alabama was merited. The Eastern

District of Virginia was substantially more convenient for the Fund than the Northern District of Alabama would have been given the location of the Fund's records and attorneys. The convenience of the Fund is a matter of congressional concern because plan assets spent to prosecute collection actions in multiple jurisdictions are assets that cannot be used to pay promised pension benefits. *See Central States Se. & Sw. Areas Pension Fund v. Gerber Truck Service, Inc.*, 870 F.2d 1148, 1151 (7th Cir 1989) (*en banc*) (noting that costs incurred by multiemployer plans in "tracking down reneging employers and litigating also come out of money available to pay benefits"). It was for that reason that Congress provided for venue in ERISA collection actions in the jurisdiction in which a pension fund is administered as discussed above. *See* H.R. Rep. No. 533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S. Code Cong. & Admin. News 4639, 4655, *quoted in Baylor Heating*, 702 F. Supp. at 1256.

The Employer argues that the case should have been transferred (even though it never actually moved the district court for a transfer) because the facts of this case are "virtually identical" to those in *Flynn v. Berich,* 603 F. Supp.2d 49 (D.D.C. 2009). Employer's Brief at 33. In *Flynn,* the district court granted the employer's motion under 28 U.S.C. § 1404 to transfer the case to Colorado. The *Flynn* court relied heavily in granting the motion to transfer on the fact that the employer's related bankruptcy case was already pending in Colorado and the

pension fund had filed a claim in the bankruptcy case, facts that are not present here.  603 F.Supp. 2d at 51.  Further, the *Flynn* court relied on the presence of relevant witnesses in Colorado; here, the district court made clear that there was unlikely to be a need for any witness testimony in that the Employer had waived its defenses to liability by failing to initiate arbitration.  Thus, the *Flynn* case is neither identical nor binding.  The Employer has failed to demonstrate any abuse of discretion in the district court's decision not to transfer the instant action.

## II.    The District Court Correctly Granted the Fund's Motion for Summary Judgment.

### A.    Standard of Review.

This Court reviews summary judgments *de novo* on appeal.  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 118-19 (4th Cir. 1991).  Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986).

On summary judgment, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986). However, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary

judgment is appropriate. *Id.* at 587; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). If the non-moving party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2).

**B.     Applicable Legal Principles Regarding Withdrawal Liability.**

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1453 (1988), amended ERISA to require multiemployer pension plans to allocate a proportional share of the plan's unfunded vested benefit liability to employers that withdraw from the plan. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 725 (1984). The purpose of ERISA, and by extension

MPPAA, is "to guarantee that if a worker has been promised a defined pension benefit upon retirement … he actually will receive it." *Id*. at 720.

Due to the transitory nature of employment in the building and construction industry, MPPAA provides a special rule for building and construction industry employers that contribute to plans that primarily cover employees in the building and construction industry. *Carpenters Pension Trust Fund for N. Calif. v. Underground Const. Co. Inc.,* 31 F.3d 776, 778 (9th Cir. 1994). Under that rule, a complete withdrawal occurs if the employer not only ceases to have an obligation to contribute under the plan but also continues to perform work (or, within five years, resumes performing work) in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. *Id., citing* 29 U.S.C. § 1383(b)(2) (Add. at A-4).

For purposes of withdrawal liability, 29 U.S.C. § 1301(b)(1) (Add. at A-3) states that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer."[9] *See, e.g.,*

---

[9] 29 U.S.C. § 1301(b)(1) (Add. at A-3) authorizes the Pension Benefit Guaranty Corporation ("PBGC") to promulgate regulations defining when to consider trades or businesses to be under common control. The applicable PBGC regulation adopts by reference the test set forth in Treasury regulations promulgated under 26 U.S.C. § 414(c). 29 C.F.R. § 4001.3. The referenced Treasury regulations, in turn, provide that two trades or businesses are under common control where the same five or fewer individuals own a controlling

*Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991) ("It is established law that each member of a control group is jointly and severally liable under ERISA for withdrawal liability generated by any member's activities.")

Upon a complete withdrawal, an employer is to be allocated a share of the unfunded vested benefits of the fund from which it has withdrawn in an amount to be determined pursuant to a statutory formula in 29 U.S.C. § 1391. Once a pension fund determines that a withdrawal has occurred, it must calculate the amount of the employer's withdrawal liability, notify the withdrawing employer of the withdrawal determination, the amount of its withdrawal liability, and its statutorily-prescribed payment schedule, and demand that payments be made to the fund pursuant to such schedule. *See* 29 U.S.C. § 1399(b) (Add. at A-5).

The withdrawn employer has the right to submit a request for review by the plan sponsor of the plan's withdrawal liability determination within 90 days after the employer's receipt of the assessment letter. 29 U.S.C. § 1399(b)(2)(A) (Add. at A-5). After that, pursuant to 29 U.S.C. § 1401(a)(1) (Add. at A-7), "any dispute

---

interest in each organization, *e.g.*, through ownership of at least 80% of the total shares of both entities, and are in effective control of both entities, *e.g.*, through the ownership of more than 50% of the combined voting power of all classes of stock of both entities. 26 C.F.R. § 1.414(c)-2. In the instant case, it is undisputed that Julian is the sole shareholder of both Appellant corporations such that they are trades or businesses under common control to be treated as a single employer for purposes of withdrawal liability pursuant to 29 U.S.C. § 1301(b)(1).

between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [ERISA] sections 4201 through 4219 [29 U.S.C. §§ 1381 through 1399] shall be resolved through arbitration." *See, e.g., Board of Trs., Sheet Metal Workers' Nat. Pension Fund v. BES Servs., Inc.,* 469 F.3d 369, 374 (4th Cir. 2006) (MPPAA provided streamlined process for resolving disputes over withdrawal liability determinations thereby reducing costs to preserve plan assets).

MPPAA provides that either party may initiate an arbitration proceeding within 60 days after the earlier of (1) the date the plan sponsor responds to the request for review or (2) 120 days after the employer requests review. 29 U.S.C. § 1401(a)(1) (Add. at A-7). Alternatively, the parties may jointly initiate arbitration within 180 days after the date of the plan's assessment letter. *Id.* In *Board of Trustees, Sheet Metal Workers Natl. Pension Fund v. Courtad Constr. Sys., Inc.,* 439 F. Supp. 2d 574, 578 n.6 (E.D. Va. 2006), the court explained that "[a]rbitration is the preferred means of dispute resolution both because of the arbitrator's specialized knowledge with respect to multiemployer plans and the speed and economy of the arbitration process."

Where an employer notified of its withdrawal liability assessment does not initiate arbitration, it waives its defenses to the plan's assessment and cannot raise those defenses in a subsequent collection action. *See BES Servs.,* 469 F.3d at 376 (because employer failed to initiate arbitration, issues it seeks to raise in federal

30

court collection action about its withdrawal liability are deemed waived). *See also Teamsters Pension Trust Fund-Bd. of Trustees of Western Conference v. Allyn Transp. Co.*, 832 F.2d 502 (9th Cir. 1987). In *Allyn*, the court indicated that, "by the express terms of § 1401(a)(1) [(Add. at A-7)] *[a]ny* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated." 832 F.2d at 504. The court explained that,

> Congress was dissatisfied with the collection procedures that resulted in lengthy, costly and complex litigation; provisions for informal, expeditious resolution of withdrawal liability disputes were at the heart of the MPPAA; and the value of arbitration in fulfilling Congress' intent to provide an efficient, expeditious dispute resolution mechanism lies in *initial* resort to that mechanism.

*Allyn*, 832 F.2d at 504 (internal quotations and citations omitted, emphasis in original).

Courts have held that MPPAA's compulsory arbitration requirement is a prudential rule akin to the doctrine of exhaustion of administrative remedies rather than an absolute jurisdictional bar. *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991) (citing cases). Nevertheless, courts have also viewed it as a requirement that should be enforced absent exceptional circumstances. *See id.*

Some courts have permitted employers to bring a federal court action without first arbitrating but only if the employer can successfully argue that it is not an "employer" to which the arbitration requirement applies. *See, e.g.,*

*Teamsters Joint Council No. 83 v. Centra, Inc*., 947 F.2d 115, 122 (4th Cir. 1991). In *Centra,* the Court explained that, "this limited exception to the statutory arbitration command has been found applicable only in cases where the employer claims that it did not *become* an employer for MPPAA purposes in time to acquire withdrawal liability, or where the employer asserts that it was *never* an MPPAA employer and thus is not subject to ERISA's dispute resolution procedures." *Id.* at 122.

Where no arbitration proceeding is timely initiated, "the amounts demanded by the plan sponsor under [29 U.S.C. § 1399(b)(1) (Add. at A-5)] shall be due and owing on the schedule set forth by the plan sponsor . . . [and] [t]he plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection." 29 U.S.C. § 1401(b)(1) (Add. at A-7). In such a collection action, a plan need only establish three elements to be entitled to summary judgment: "(1) that the defendant is an 'employer' under the MPPAA; (2) that the pension fund notified the defendant of its withdrawal liability as required by the MPPAA; and (3) that the defendant failed to timely initiate arbitration." *Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund v. Canny,* 900 F.Supp. 583, 592 (N.D.N.Y.1995). *See also Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 597-98 (7th Cir. 2008) (same).

32

## C.    The Fund Proved That the Employer is Liable.

The Employer did not timely initiate arbitration in this matter.  Accordingly, it waived its defenses to the liability under the case law discussed above.  The only defense that it may arguably bring in court without having arbitrated its dispute is the argument that it is not an "employer" under MPPAA to which the arbitration requirement applies.  Although the Employer does not clearly make this argument, the Employer's brief could be construed to argue that it is not an "employer" to which the arbitration requirement applies because it did not sign a CBA requiring contributions to the Fund.  *See* Employer's Brief at 29-31, 35-39.  The district court correctly rejected this argument as should this Court.

First, it is undisputed that Julian signed the Letter of Assent on behalf of PSI.  Julian's statement that he never saw the CBA to which he bound his company by virtue of the Letter of Assent is directly contradicted by his statement in the Letter of Assent that

> The undersigned employer hereby certifies that he has examined a copy of the aforesaid Agreement and is familiar with the terms thereof and that the execution of this Letter of Assent shall be binding in the same manner and to the same extent as though said employer had executed the above Agreement and all amendments thereof.

A party is bound by a contract it has signed unless it can show special circumstances that relieve it of the contractual obligation.  *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 34 (2d Cir. 1997).  The Employer has not brought

one scintilla of evidence of special circumstances that relieve it of the obligations set forth in the Letter of Assent that it signed.

Further, the Fund, as a third party beneficiary of the agreement between the Employer and Local 91, is entitled to rely on the Employer's representation in the Letter of Assent that it agreed to make contributions to the Fund. *See Bakery and Confectionary Union and Indus. Intern. Pension Fund v. Ralph's Grocery Co*., 118 F.3d 1018, 1021-22 (4th Cir. 1997) (ERISA permits multiemployer plans to enforce literal terms of employer's commitment). The Fund did in fact rely on that statement in providing pension credits to the Employer's employees in return for the employer's contributions and reports made over a thirteen year period from 1998 to 2011. Given its statements in the Letter of Assent and its conduct after signing the Letter of Assent, the Employer is equitably estopped from denying that it was bound by the Letter of Assent. *See, e.g., Alaska Trowel Trades Pension Fund v. Lopshire*, 103 F.3d 881, 884 (9th Cir. 1996) (holding that the trust fund reasonably relied on the employer's appearance of continued adherence to the collective bargaining agreement where the employer regularly submitted monthly reports and contributions pursuant to the agreement over a five-year period).

The Employer's argument that it was not bound by the Letter of Assent to contribute to the Fund is wholly without merit and must be rejected by the Court. The Employer argues that the Letter of Assent is not a valid contract under state

law. Employer's Brief at 30. The Supreme Court has stated, however, that courts are not free to apply state rules to the interpretation of collective bargaining agreements. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962). The Court there explained the need for a single body of federal law as to the interpretation and enforcement of collective bargaining agreements, which is the

> keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon competing state and federal interests in this area, [] we cannot but conclude that in enacting [section 301 of the Labor Management Relations Act of 1947 (giving federal courts jurisdiction over suits involving breaches of collective bargaining agreements)] Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

*Id.* (citations omitted). In view of this principle, none of the Alabama contract interpretation cases cited by the Employer is applicable in determining the validity of the Letter of Assent to bind the Employer to make contributions to the Fund. [10]

Moreover, *Volvo Cars of N. Am., LLC v. United States*, 571 F.3d 373, 374 (4th Cir. 2009) (Employer's Brief at 30, 37), was a federal income tax refund case in which the court said that the nature of the interest created by the sales contract at

---

[10]With specific regard to the case the Employer cited on partial integration (Employer's Brief at 30, 38), s*ee Ralph's Grocery*, 118 F.3d at 1025 (traditional rules regarding integration clauses do not apply to collective bargaining agreements because they conflict with ERISA § 515 (29 U.S.C. § 1145 (Add. at A-3)) under which the literal terms of the agreement control the employers obligation to the employee benefit fund).

issue was a matter of state law, while the tax consequences of the interest were a matter of federal law, such that it was appropriate to examine state contract law in interpreting the contract. *See also Aquilino v. United States*, 363 U.S. 509, 514 (1960) (Employer's Brief at 37) (tax lien case in which the court applied state law in ascertaining the taxpayer's property rights and federal law in reconciling the claims of competing lienors). These tax cases have no bearing on the interpretation of a collective bargaining agreement under federal labor law. *See, e.g., Lingle v. Norge Div of Magic Chef, Inc.*, 486 U.S. 399, 406 (1988) (if resolution of a claim depends on the meaning of a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute).

Under applicable federal common law, the Employer's argument lacks merit. In essence, the Employer argues that it never signed a CBA in that it only signed the Letter of Assent adopting the CBA by reference (Employer's Brief at 29-31, 36). This Court explained in *Industrial Turnaround Corp. v. N.L.R.B.*, 115 F.3d 248, 252 (4th Cir. 1997), that 29 U.S.C. § 158(f) ("§ 8(f)") allows employers or multiemployer associations to enter into "pre-hire" collective bargaining agreements with unions to establish the terms and conditions of employment that will apply to bargaining unit employees. Further, the Court explained that,

> an individual construction employer can voluntarily execute a letter of assent, by which the individual employer authorizes a multi-

36

> employer bargaining association to represent it in § 8(f) negotiations. In such an arrangement, the individual employer agrees to be bound by the § 8(f) agreement reached between the multi-employer bargaining association and the union.

*Id.* The Court in that case concluded that the employer was bound to the terms of the collective bargaining agreement adopted by reference in the letter of assent until the employer revoked the agreement. *Id.* Likewise, the Employer in this case was bound by the Letter of Assent to comply with the CBA notwithstanding that the document incorporated the CBA by reference rather than spelling out all of the terms of the CBA.

In sum, it is federal common law that applies in determining whether the Letter of Assent in this case was binding on the Employer. Federal common law makes clear that a letter of assent, by which an employer agrees to be bound to a separate CBA bargained between a multiemployer bargaining association and a union, binds the employer to the terms of the CBA and is sufficiently definite to be enforceable.

It is clear as a matter of law that PSI was signatory to an agreement explicitly requiring it to contribute to the Fund. As such, PSI is, by extension, an "employer" subject to the arbitration requirement of MPPAA. *See, e.g., Seaway Port Auth. of Duluth v. Duluth-Superior ILA Marine Ass'n Restated Pension Plan*, 920 F.2d 503, 507 (8th Cir 1990) (person who is obligated to contribute to a plan is "employer" potentially subject to withdrawal liability under MPPAA); *Flying*

*Tiger Line v. Teamsters Pension Trust Fund of Phila.*, 830 F.2d 1241, 1250-51 (3d Cir. 1987) (company that was "an employer" was subject to MPPAA's dispute resolution procedure); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 122 (4th Cir. 1991) (limited exception to statutory arbitration command applies only to claim that employer was never a "MPPAA employer" and thus was not subject to arbitration requirement).

It is also undisputed that PSI Mechanical is a trade or business under common control with PSI such that it is treated as a single employer with PSI under ERISA. It is accordingly also subject to the arbitration requirement. *See Centra, Inc.*, 947 F.2d at 120 (MPPAA's definition of an "employer" encompasses not merely the entity making contributions to the pension plan, but all "trades and businesses" that are under "common control" along with that entity.)

Because the Employer was subject to the arbitration requirement but did not invoke arbitration, it waived the opportunity to dispute the Fund's findings with regard to the fact or quantum of withdrawal liability. *See, e.g., I.A.M. Nat'l Pension Fund, Plan A v. Clinton Engines Corp.*, 825 F.2d 415, 422-23 (D.C. Cir 1987) (consequences of failing to arbitrate is waiver of defenses). The Fund's burden of proof on summary judgment was, therefore, limited to showing that it had notified the Employer of the assessment of withdrawal liability and that the employer failed to initiate arbitration. *See* 29 U.S.C. § 1401(b)(1) (Add. at A-7)

("If no arbitration proceeding has been initiated…the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing…"); *Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund v. Canny,* 900 F.Supp. 583, 592 (N.D.N.Y.1995).

It is undisputed that the Fund notified the Employer of the assessment as required by 29 U.S.C. § 1399(b)(1) (Add. at A-5).  (App. I, Doc. 27 ¶ 8 (allegation in Amended Complaint that Fund notified Employer of withdrawal liability); App. II, Doc. 40 ¶ 6 (admitting allegations of Amended Complaint ¶ 8).)  Further, the Fund has demonstrated that it has no evidence that the Employer initiated arbitration, of which the Employer would have had to notify the Fund. (App. II, Doc. 36-1 p. 5 of 77 (Sweeney Aff.) ¶ 15.)   The Employer has not brought forward one scintilla of evidence that it did initiate arbitration.

Accordingly, the Fund met its burden to show that there was no genuine dispute of material fact and that it was entitled to summary judgment as a matter of law.

## D.    The Employer's Other Arguments on Appeal Lack Merit.

### 1.    This is an Action for Statutory Withdrawal Liability Not Post-Expiration Contributions.

The Employer here argues that there is no subject matter jurisdiction and the Fund lacks standing because a claim for post-expiration contributions must be filed as an unfair labor practice charge under the National Labor Relations Act and is

not actionable under ERISA as the Court held in *Laborers Health and Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539 (1988). Employer's Brief at 35, 39-44. The Employer is incorrect that the decision in *Advanced Lightweight* poses an obstacle to the Fund's claim in the instant lawsuit.

The *Advanced Lightweight* Court distinguished between two important changes Congress made to ERISA through the 1980 amendments comprising MPPAA. The first of these changes was the establishment of withdrawal liability, and the second was the establishment of a right of action for an employee benefit fund to be able to sue an employer for unpaid contributions. The first of these is a liability arising from statute, and the second arises from an employer's contractual obligation. It is the former, not the latter that is at issue in this case.

More specifically, the *Advanced Lightweight* Court explained that, in MPPAA, Congress was

> primarily concerned about the burden placed upon the remaining contributors to a multiemployer fund when one or more of them withdraw. In response to this concern Congress enacted an elaborate provision imposing "withdrawal liability" on such withdrawing employers. That liability arises when an employer ceases to have an "obligation to contribute" to the plan. That term is defined for the purposes of the withdrawal liability portion of the statute in language that unambiguously includes both the employer's contractual obligations and any obligation imposed by the NLRA.

484 U.S. at 545-46. Thus withdrawal liability is owed after an employer ceases to have an obligation to contribute to a plan, which obligation can be due to the terms of an agreement or due to a duty under applicable labor management relations law. *See* 29 U.S.C. § 1392(a).

Congress was also concerned in adopting MPPAA, the *Advanced Lightweight* Court further explained, about employers' failure to make their "promised contributions" on a regular and timely basis. Accordingly, Congress enacted 29 U.S.C. § 1145 (Add. at A-3), requiring employers to make contributions owed under the terms of a collective bargaining agreement, and 29 U.S.C. § 1132 (Add. at A-2), giving a plan a right of action to sue for an employer's failure to do so. The text of that provision "describes the employer's contractual obligation to make contributions but omits any reference to a noncontractual obligation imposed by the NLRA." Id. at 546. In view of this distinction, the Court concluded that the plan's right to sue under ERISA for unpaid contributions was limited to the contributions promised by contract and "does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the NLRA," which is a matter to be decided in the first instance by the National Labor Relations Board (NLRB). *Id.* at 544, 549.

As clearly set out in *Advanced Lightweight,* then, withdrawal liability and post-expiration contributions are two separate and distinct forms of possible liability. The first applies to an employer that has permanently ceased to have an obligation to contribute to a fund while the second applies to an employer that has an obligation under the NLRA to maintain terms and conditions of the expired agreement pending good faith negotiations for a new agreement with the union.

It is the first that is at issue in this case. As the Employer has permanently ceased to have an obligation to contribute to the Fund, there is no issue of whether it has an ongoing obligation to maintain terms and conditions pursuant to the NLRA and, accordingly, no issue in the primary jurisdiction of the NLRB. Thus, *Advanced Lightweight*'s holding poses no obstacle to the relief sought by the Fund in this case.

### 2. The Fund's Motion for Summary Judgment was Supported by Substantial Evidence.

Finally, the Employer here argues that the district court "flouted" the summary judgment rules in this case because the Fund allegedly offered "no evidence" in support of its motion. Employer's Brief at 45. The Employer is patently incorrect.

The Employer's argument seems to reduce to the view that it was improper for the district court to cite allegations in the Complaint as facts where the Complaint had been superseded by the Amended Complaint. See Employer's Brief

at 47-48.  This argument is without merit in that most of the factual allegations in the Complaint (App. 1, Doc. 1) and Amended Complaint (App. 1, Doc. 27) were the same, and the Fund supported those allegations for purposes of moving for summary judgment with the affidavit of Fund Administrator William T. Sweeney, Jr. (App. II, Doc. 36-1) as well as the exhibits thereto. The Fund also submitted or cited declarations of its counsel, and the accompanying relevant documents that were authenticated by them, as well as the Employer's admissions.  (*See* App. I, Doc. 32-1 (Declaration of Dinah S. Leventhal (in opposition to motion to dismiss) and exhibits); App. II, Doc. 36-2 (Defendant PSI's Responses to Plaintiffs' Amended Requests for Admissions); App. II, Doc. 36-3 (Declaration of John R. Harney and exhibits); App. II, Doc. 46 (Supplemental Affidavit of William T. Sweeney, Jr. and exhibits).)

The employer was unable to produce contrary evidence because the material facts were simply undisputed.  (*See* App. II, Doc. 42 (Order granting Fund's motion for summary judgment, which begins "Plaintiffs have presented and defendants have not disputed, the following facts …").)  Indeed, even on appeal, it is clear that all of the Employer's arguments go to the legal import of the undisputed facts not to disputes as to the facts themselves.

This Court reviews the district court's ruling on summary judgment *de novo*, and there is clearly sufficient undisputed evidence in the record to support the district court's finding of liability. This Court should affirm that decision.

## CONCLUSION

For the foregoing reasons, the district court was correct in denying the Employer's Motion to Dismiss and in granting the Fund's Motion for Summary Judgment. Accordingly, the Fund respectfully requests that the Court of Appeals affirm the district court's decision.

Respectfully submitted,

/s/John R. Harney

John R. Harney
Dinah S. Leventhal
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016
Tel: 202-362-0041
jharney@odonoghuelaw.com
dleventhal@odonoghuelaw.com

## POSITION ON ORAL ARGUMENT

The Fund does not believe that oral argument is necessary to the Court's understanding of this matter.

**ADDENDUM**

1. **Unpublished Decision (pre-2007)**

2000 WL 1923515
Only the Westlaw citation is currently available.
United States District Court, E.D. Virginia.
TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, Plaintiff,
v.
T.L. SERVICES, INC., Defendant.
No. CIV. A. 00–1113–A. | Sept. 27, 2000.

**Attorneys and Law Firms**

John Robert Harney, Esq., O'Donoghue & O'Donoghue, Washington, DC, for Plaintiff or Petitioner.

Jonathan Richard Mook, Esq., DiMuro Ginsberg & Mook PC, Alexandria, for Defendant or Respondent.

**MEMORANDUM OPINION AND ORDER**

BRINKEMA, District J.
**\*1** Before the Court is the Defendant's Motion to Transfer Venue of this civil action to the Western District of Arkansas. Having reviewed both parties' pleadings, this Court concludes that oral arguments would not assist the Court and we will resolve this motion on the pleadings.

Transfer of venue under 28 U.S.C. § 1404(a) is committed to the sound discretion of the trial court, Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988), with consideration to the plaintiff's choice of venue, the convenience of parties and witnesses, and the interests of justice. See Board of Trustees, Sheet Metal Workers National Fund v. Baylor Heating & Air Conditioning, 702 F.Supp. 1253, 1255–56 (E.D.Va.1988). The movant bears the burden of demonstrating that the balance of equities, judicial economy, and the convenience of all parties and witnesses favors transfer. See Eldridge v. Bouchard, 620 F.Supp. 678, 684 (W.D.Va.1985); General Foam Plastics Corp. v. Kraemer Export Corp., 806 F.Supp. 88, 89–90 (E.D.Va.1992). Venue transfer may not simply shift the burden from one party to the other. See Trustees v. Best Automatic Fire Protection, Inc., 578 F.Supp. 94 (D.Md.1983).

The plaintiff's venue selection deserves substantial weight, particularly in ERISA cases. See Baylor Heating, 702 F.Supp. at 1256; Eldridge, 620 F.Supp. at 684. ERISA's special venue provisions authorizing suits in districts where funds are administered reflects a specific Congressional intent to ease the burdens of nationwide litigation on fund administrators such as the plaintiff. See Trustees of National Asbestos Workers Pension Fund & Medical Fund v. Lake Erie Insulation Co., 688 F.Supp. 1059, 1060 (D.Md.1988); Best Automatic Fire Protection, Inc., 578 F.Supp. at 95.

Defendant attempts to distinguish Baylor and other ERISA cases which denied transfers of venue by emphasizing special factual disputes in this case over the nature of its employees' work and the credibility of the plaintiff's records. Defendant also argues that most of the witnesses at trial will be defense witnesses.

We find these arguments insufficient to meet the movant's burden. ERISA provides deference to the plaintiff's choice of forum. Defendant's apparent defenses are not unique and this district is not so far from Arkansas as to significantly inconvenience any witnesses.

Accordingly, it is hereby

ORDERED that Defendant's Motion to Transfer Venue is DENIED.

The Clerk is directed to remove the argument of this motion from the September 29, 2000 motions docket and to forward copies of this Order to counsel of record.

## 2.  <u>Constitutional Provisions</u>

### U.S. Constitution, Amendment V

No person shall be … deprived of life, liberty or property, without due process of law …

### U.S. Constitution, Amendment XIV

No State shall … deprive any person of life, liberty or property, without due process of law …

## 3.  <u>Statutory Provisions</u>

### 29 U.S.C. § 1132
§ 1132. Civil enforcement

\*       \*       \*

(e) Jurisdiction

**(1)** Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

**(2)** Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

\*       \*       \*

(g) Attorney's fees and costs; awards in actions involving delinquent contributions

**(1)** In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

**(2)** In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

   **(A)** the unpaid contributions,

   **(B)** interest on the unpaid contributions,

   **(C)** an amount equal to the greater of--

      **(i)** interest on the unpaid contributions, or

      **(ii)** liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

   **(D)** reasonable attorney's fees and costs of the action, to be paid by the defendant, and

   **(E)** such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

### 29 U.S.C. § 1145
§ 1145. Delinquent contributions

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

### 29 U.S.C. § 1301
§ 1301. Definitions
\*     \*     \*

**(b)(1)** An individual who owns the entire interest in an unincorporated trade or business is treated as his own employer, and a partnership is treated as the employer of each partner who is an employee within the meaning of section 401(c)(1) of Title 26. For purposes of this subchapter, under regulations prescribed by the corporation, all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer. The regulations prescribed under the preceding sentence shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c) of Title 26.
\*     \*     \*

**29 U.S.C. § 1383**

§ 1383. Complete withdrawal

(a) Determinative factors

For purposes of this part, a complete withdrawal from a multiemployer plan occurs when an employer--

**(1)** permanently ceases to have an obligation to contribute under the plan, or

**(2)** permanently ceases all covered operations under the plan.

(b) Building and construction industry

**(1)** Notwithstanding subsection (a) of this section, in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if--

**(A)** substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and

**(B)** the plan--

**(i)** primarily covers employees in the building and construction industry, or

**(ii)** is amended to provide that this subsection applies to employers described in this paragraph.

**(2)** A withdrawal occurs under this paragraph if--

**(A)** an employer ceases to have an obligation to contribute under the plan, and

**(B)** the employer--

**(i)** continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or

**(ii)** resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

**(3)** In the case of a plan terminated by mass withdrawal (within the meaning of section 1341a(a)(2) of this title), paragraph (2) shall be applied by substituting "3 years" for "5 years" in subparagraph (B)(ii).

*     *     *

**29 U.S.C. § 1399**

§ 1399. Notice, collection, etc., of withdrawal liability

(a) Furnishing of information by employer to plan sponsor

An employer shall, within 30 days after a written request from the plan sponsor, furnish such information as the plan sponsor reasonably determines to be necessary to enable the plan sponsor to comply with the requirements of this part.

(b) Notification, demand for payment, and review upon complete or partial withdrawal by employer

**(1)** As soon as practicable after an employer's complete or partial withdrawal, the plan sponsor shall--

  **(A)** notify the employer of--

    **(i)** the amount of the liability, and

    **(ii)** the schedule for liability payments, and

  **(B)** demand payment in accordance with the schedule.

**(2)(A)** No later than 90 days after the employer receives the notice described in paragraph (1), the employer--

  **(i)** may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,

  **(ii)** may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and

  **(iii)** may furnish any additional relevant information to the plan sponsor.

**(B)** After a reasonable review of any matter raised, the plan sponsor shall notify the employer of--

  **(i)** the plan sponsor's decision,

  **(ii)** the basis for the decision, and

  **(iii)** the reason for any change in the determination of the employer's liability or schedule of liability payments.

\*        \*        \*

Page A-5

(c) Payment requirements; amount, etc.

\*        \*        \*

 **(2)** Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

**(3)** Each annual payment determined under paragraph (1)(C) shall be payable in 4 equal installments due quarterly, or at other intervals specified by plan rules. If a payment is not made when due, interest on the payment shall accrue from the due date until the date on which the payment is made.

**(4)** The employer shall be entitled to prepay the outstanding amount of the unpaid annual withdrawal liability payments determined under paragraph (1)(C), plus accrued interest, if any, in whole or in part, without penalty. If the prepayment is made pursuant to a withdrawal which is later determined to be part of a withdrawal described in paragraph (1) (D), the withdrawal liability of the employer shall not be limited to the amount of the prepayment.

**(5)** In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means--

   **(A)** the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

   **(B)** any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

**(6)** Except as provided in paragraph (1)(A)(ii), interest under this subsection shall be charged at rates based on prevailing market rates for comparable obligations, in accordance with regulations prescribed by the corporation.

**(7)** A multiemployer plan may adopt rules for other terms and conditions for the satisfaction of an employer's withdrawal liability if such rules--

   **(A)** are consistent with this chapter, and

   **(B)** are not inconsistent with regulations of the corporation.

\*        \*        \*

Page A-6

## 29 U.S.C. § 1401
### § 1401. Resolution of disputes

(a) Arbitration proceedings; matters subject to arbitration, procedures applicable, etc.

**(1)** Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration. Either party may initiate the arbitration proceeding within a 60-day period after the earlier of--

    **(A)** the date of notification to the employer under section 1399(b)(2)(B) of this title, or

    **(B)** 120 days after the date of the employer's request under section 1399(b)(2)(A) of this title.

The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand under section 1399(b)(1) of this title.

**(2)** An arbitration proceeding under this section shall be conducted in accordance with fair and equitable procedures to be promulgated by the corporation. The plan sponsor may purchase insurance to cover potential liability of the arbitrator. If the parties have not provided for the costs of the arbitration, including arbitrator's fees, by agreement, the arbitrator shall assess such fees. The arbitrator may also award reasonable attorney's fees.

\*     \*     \*

(b) Alternative collection proceedings; civil action subsequent to arbitration award; conduct of arbitration proceedings

**(1)** If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

\*     \*     \*

## 29 U.S.C. § 1451
### § 1451. Civil actions

(a) Persons entitled to maintain actions

**(1)** A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

**(2)** Notwithstanding paragraph (1), this section does not authorize an action against the Secretary

of the Treasury, the Secretary of Labor, or the corporation.

(b) Failure of employer to make withdrawal liability payment within prescribed time

In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).

(c) Jurisdiction of Federal and State courts

The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability.

(d) Venue and service of process

An action under this section may be brought in the district where the plan is administered or where a defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.

(e) Costs and expenses

In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party.

(f) Time limitations

An action under this section may not be brought after the later of--

   **(1)** 6 years after the date on which the cause of action arose, or

   **(2)** 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

(g) Service of complaint on corporation; intervention by corporation

A copy of the complaint in any action under this section or section 1401 of this title shall be served upon the corporation by certified mail. The corporation may intervene in any such action.

4.      **Regulatory Provisions**

**29 C.F.R. § 4219.31**
§ 4219.31 Overdue and defaulted withdrawal liability; overpayment.

(a) Overdue withdrawal liability payment. Except as otherwise provided in rules adopted by the plan in accordance with § 4219.33, a withdrawal liability payment is overdue if it is not paid on the date set forth in the schedule of payments established by the plan sponsor.

(b) Default.

(1) Except as provided in paragraph (c)(1), "default" means--

(i) The failure of an employer to pay any overdue withdrawal liability payment within 60 days after the employer receives written notification from the plan sponsor that the payment is overdue; and

(ii) Any other event described in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

(2) In the event of a default, a plan sponsor may require immediate payment of all or a portion of the outstanding amount of an employer's withdrawal liability, plus interest. In the event that the plan sponsor accelerates only a portion of the outstanding amount of an employer's withdrawal liability, the plan sponsor shall establish a new schedule of payments for the remaining amount of the employer's withdrawal liability.

(c) Plan review or arbitration of liability determination. The following rules shall apply with respect to the obligation to make withdrawal liability payments during the period for plan review and arbitration and with respect to the failure to make such payments:

(1) A default as a result of failure to make any payments shall not occur until the 61st day after the last of--

(i) Expiration of the period described in section 4219(b)(2)(A) of ERISA;

(ii) If the employer requests review under section 4219(b)(2)(A) of ERISA of the plan's withdrawal liability determination or the schedule of payments established by the plan, expiration of the period described in section 4221(a)(1) of ERISA for initiation of arbitration; or

(iii) If arbitration is timely initiated either by the plan, the employer or both, issuance of the arbitrator's decision.

(2) Any amounts due before the expiration of the period described in paragraph (c)(1) shall be paid in accordance with the schedule established by the plan sponsor. If a payment is not made when due under the schedule, the payment is overdue and interest shall accrue in

accordance with the rules and at the same rate set forth in § 4219.32.

(d) Overpayments. If the plan sponsor or an arbitrator determines that payments made in accordance with the schedule of payments established by the plan sponsor have resulted in an overpayment of withdrawal liability, the plan sponsor shall refund the overpayment, with interest, in a lump sum. The plan sponsor shall credit interest on the overpayment from the date of the overpayment to the date on which the overpayment is refunded to the employer at the same rate as the rate for overdue withdrawal liability payments, as established under § 4219.32 or by the plan pursuant to § 4219.33.

## 5.    Federal Rules of Evidence

### Federal Rules of Evidence Rule 1002
Rule 1002. Requirement of the Original

An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.

### Federal Rules of Evidence Rule 1004
Rule 1004. Admissibility of Other Evidence of Content

An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:

**(a)** all the originals are lost or destroyed, and not by the proponent acting in bad faith;

**(b)** an original cannot be obtained by any available judicial process;

**(c)** the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

**(d)** the writing, recording, or photograph is not closely related to a controlling issue.

### CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned hereby certifies that the foregoing Brief of Appellees is presented in Times New Roman 14-point font, which is a proportionally spaced typeface, and contains 10,064 words exclusive of the Corporate Disclosure Statement, Table of Contents, Table of Authorities, Addendum, Certificate of Compliance, and Certificate of Service. The word count was determined using Microsoft Word 2007.

/s/John R. Harney
John R. Harney
Dinah S. Leventhal
O'DONOGHUE & O'DONOGHUE LLP
4748 Wisconsin Avenue, N.W.
Washington, D.C. 20016

*Counsel for Appellees*

DATED: April 28, 2014

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that, on this 28th day of April 2014, the foregoing Brief of Appellees was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to opposing counsel listed below.  The undersigned also certifies that the original and 8 copies of the foregoing were delivered to the Court by overnight mail.

> Gregory F. Yaghmai
> Rutledge & Yaghmai
> Two Chase Corporate Drive
> Suite 460
> Birmingham, AL 35244
> Yaghmai@rylaw.net

>                    /s/John R. Harney
> John R. Harney
> Dinah S. Leventhal
> O'DONOGHUE & O'DONOGHUE LLP
> 4748 Wisconsin Avenue, N.W.
> Washington, D.C. 20016
> dleventhal@odonoghuelaw.com
>
> *Counsel for Appellees*

243084_1